NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MARK ROBINSON, individually and on behalf of all others similarly situated, | Civil Action No. 23-04458 |
| Plaintiff, | **OPINION** |
| v. | April 12, 2024 |
| MAINTECH INC. and MAINTECH, INCORPORATED, | |
| Defendants. | |

**SEMPER**, District Judge.

The current matter comes before the Court on Defendants Maintech Inc. and Maintech, Incorporated's ("Defendants") Motion to Dismiss Plaintiff Mark Robinson's ("Plaintiff") Complaint (ECF 1, "Compl."), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (ECF 5, "MTD.") Plaintiff opposed the motion. (ECF 13, "Opp.") Defendants filed a reply. (ECF 14, "Reply.") The Court has decided this motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 78.1. For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

This putative class action lawsuit arises from a cyberattack on Maintech in January 2023. (ECF 1, Compl. ¶ 5.) The data breach resulted in the unauthorized disclosure of consumers' personal information including names, Social Security numbers, driver's licenses, and financial

---

[1] The facts and procedural history are drawn from the Complaint (ECF 1, Compl.), Defendants' Motion to Dismiss (ECF 5, MTD), Plaintiff's Opposition (ECF 13, Opp.), and Defendants' Reply. (ECF 14, Reply.)

information. (*Id.* ¶ 2.) Plaintiff Mark Robinson is an alleged data breach victim, though he is unsure why Maintech possessed his personally identifiable information ("PII"). (*Id.* ¶¶ 13, 51.) Third parties provided Maintech with consumers' PII. (*Id.* ¶ 4.) Maintech did not identify the information involved in the data breach until June 2023. (*Id.* ¶ 5.) Maintech began notifications about the data breach in July 2023. (*Id.* ¶ 6.) Plaintiff filed his Complaint on August 14, 2023. (*Id.*) Plaintiff and the proposed class assert six counts against Defendants: negligence (Count I), negligence *per se* (Count II), breach of contract (Count III), unjust enrichment (Count IV), breach of fiduciary duty (Count V), and violation of the New Jersey Consumer Fraud Act ("NJCFA") (Count VI). Defendants filed a motion to dismiss Counts III, IV, V, and VI on September 21, 2023. (ECF 5, MTD.) Plaintiff filed his opposition on November 13, 2023. (ECF 13, Opp.) Defendants filed their reply brief on November 20, 2023. (ECF 14, Reply.)

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under the Rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

"When a complaint involves allegations of fraud, a plaintiff must meet the heightened pleading requirements of Rule 9(b) to state a claim under Rule 12(b)(6)." *Franchitti v. Cognizant Tech. Sols. Corp.*, 555 F. Supp. 3d 63, 68 (D.N.J. 2021) (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155 (3d Cir. 2014)); *see also* Fed. R. Civ. P. 9(b) (stating that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud," though conditions of the mind such as knowledge may be pled generally). "In order to satisfy Rule 9(b), a complaint must provide 'all of the essential factual background that would accompany the first paragraph of any newspaper story' — that is, the 'who, what, when, where and how' of the events at issue.'" *United States v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).

III.   <u>ANALYSIS</u>

A.  **Breach of Contract (Count III)**

Count III asserts a breach of contract claim. (ECF 1, Compl. at 24.) Defendants argue that Plaintiff failed to state a claim for breach of contract because he fails to establish third-party beneficiary status and fails to identify the specific contract and contractual provisions Defendants breached. (ECF 5, MTD at 4-7.) Plaintiff argues that his allegations sufficiently state a claim for breach of contract. (ECF 13, Opp. at 5-7.)

To state a breach of contract claim under New Jersey law, a plaintiff must plead (1) the existence of a valid contract; (2) plaintiff's performance under the contract; (3) defendant's breach of the contract; and (4) damages resulting from the breach. *Pollack v. Quick Quality Rests., Inc.*, 172 A.3d 568, 576 (N.J. Super. Ct. App. Div. 2017). To determine if a party is a third-party beneficiary with a right to enforce the terms of a contract to which it was not a party, the test is "whether the contracting parties intended that a third party should receive a benefit which might

3

be enforced in the courts." *Rieder Cmtys., Inc. v. Twp. of N. Brunswick*, 546 A.2d 563, 566 (N.J. Super. Ct. App. Div. 1988) (internal quotation and citation omitted). In *Plastic Surgery Center, P.A. v. Cigna Health and Life Insurance Company*, the court clarified that "third-party beneficiary status is dependent upon an examination of the disputed contract's terms and provisions." No. 17-2055, 2019 WL 1916205, at *8 (D.N.J. Apr. 30, 2019). Here, Plaintiff fails to allege what parties are bound in contract to each other and which party Plaintiff gave his PII to for safekeeping. Absent these allegations, the Complaint fails to state a claim for breach of contract under a third-party beneficiary theory or otherwise. The Complaint notes that "Plaintiff is unsure how Maintech got his information but assumes that one of Maintech's clients he utilizes provided Maintech with his personal information . . . ." (ECF 1, Compl. ¶ 30.) However, where the plaintiff "has neither provided a copy" nor "reference[d] a single provision from [the disputed] contract," the plaintiff has not sufficiently alleged, "nor can the Court ascertain," whether the plaintiff is a beneficiary at all. *Plastic Surgery Center, P.A.*, 2019 WL 1916205, at *8 (dismissing the plaintiff's count premised on third-party beneficiary status); *Gentry v. Chubb*, No. 21-13744, 2023 WL 3456825, at *3 (D.N.J. May 15, 2023); *see also Kaminski v. Twp. of Toms River*, No. 10-2883, 2011 WL 1432185, at *8 (D.N.J. Apr. 14, 2011) (finding that, because the plaintiffs did not dispute that they were not signatories to the contract at issue, they were required to demonstrate third-party beneficiary status in order to have standing to bring a breach of contract claim). As such, the Court dismisses the breach of contract claim without prejudice.

### B.  Unjust Enrichment (Count IV)

Count IV is an unjust enrichment claim brought in the alternative to the breach of contract claim. (ECF 1, Compl. at 25-26; ECF 13, Opp. at 7.) Defendants argue that Plaintiff failed to state a claim for unjust enrichment because Plaintiff failed to plead that he conferred a meaningful

benefit upon Defendants. (ECF 5, MTD at 4-7.) Plaintiff argues that his allegations sufficiently state a claim for unjust enrichment. (ECF 13, Opp. at 5-7.)

To establish a claim for unjust enrichment in New Jersey, "'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)). For this claim, a plaintiff must "show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-846, 2011 WL 2976839, at *26 (D.N.J. July 21, 2011). In addition, "a claim for unjust enrichment requires a direct relationship between the parties." *Hammer v. Vital Pharms., Inc.*, No. 11-4124, 2012 WL 1018842, at *10 (D.N.J. Mar. 26, 2012); *Bedi v. BMW of N. Am., LLC*, No. 15-1898, 2016 WL 324950, at *5 (D.N.J. Jan. 27, 2016) ("[T]here must be a direct relationship to assert an unjust enrichment claim."). "[I]t is the plaintiff's (as opposed to a third party's) conferral of a benefit on defendant which forms the basis of an unjust enrichment claim." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998).

Here, no facts in the Complaint allege a direct relationship between Plaintiff and Defendants. Rather, the Complaint explicitly states that the data breach "affect[ed] consumers who had no relationship with Maintech, never sought one, and never consented to Maintech collecting and storing their information." (ECF 1, Compl. ¶ 3.) Additionally, Plaintiff goes as far as acknowledging that he does not know how his PII came into Defendants' possession. (*Id*. ¶ 30.) Accordingly, Plaintiff fails to demonstrate that he had an expectation of renumeration from Defendants at the time of conferral of a benefit. The claim also fails for lack of allegations of a direct relationship between Plaintiff and Defendants in the first instance. *See Hughes,* 2011 WL

2976839, at \*26; *see also Bedi*, 2016 WL 324950, at \*5. As such, the Complaint fails to state a claim for unjust enrichment. The Court therefore dismisses the unjust enrichment claim without prejudice.

### C.  Breach of Fiduciary Duty (Count V)

Count V is a breach of fiduciary duty claim. (ECF 1, Compl. at 26-27.) Defendants argue that Plaintiff failed to state a claim for breach of fiduciary duty because he fails to allege the existence of a fiduciary relationship. (ECF 5, MTD at 9-10.) Plaintiff argues that his allegations sufficiently state a claim for breach of fiduciary duty. (ECF 13, Opp. at 8-9.)

To establish a breach of fiduciary duty, a plaintiff must plausibly allege "1) the existence of a fiduciary duty or relationship between the parties; 2) breach of that duty; and 3) resulting damages." *Read v. Profeta*, 397 F. Supp. 3d 597, 633 (D.N.J. 2019). Before a court can find a breach of a fiduciary duty, a plaintiff must allege that defendant owed a fiduciary duty to the plaintiff. *See Goodman v. Goldman, Sachs & Co.*, No. 10-1247, 2010 WL 5186180, at \*10 (D.N.J. Dec. 14, 2010). A hallmark of a fiduciary relationship is one party's placement of "trust and confidence in another[.]" *Big M, Inc. v. Dryden Advisory Grp.*, No. 08-3567, 2009 WL 1905106, at \* 24 (D.N.J. June 30, 2009) (explaining that "[a] fiduciary obligation exists whenever one person places special 'trust and confidence' in another person upon whom the person relies to exercise discretion and expertise upon behalf of that person."). Here, the Complaint does not allege a contractual fiduciary duty between the parties. The Complaint also fails to allege a special relationship giving rise to a fiduciary duty between Plaintiff and Defendants. Rather, the Complaint explicitly acknowledges the lack of a relationship between the parties. (ECF 1, Compl. ¶ 3.) The Court refuses to impute a fiduciary obligation on parties that the Plaintiff acknowledges have no relationship to each other. Plaintiff argues that Defendants created and established a relationship

with Plaintiff when they took control of his PII and that this relationship created an obligation to take reasonable steps to safely store the PII; Plaintiff also argues that this situation is necessarily a special relationship of trust and confidence. (ECF 13, Opp. at 9.) However, the Court refuses to impute fiduciary obligations on parties so situated. To the extent that the Complaint alleges contractual relationships, the amorphous relationships alleged do not give rise to fiduciary duties. *See Wingate Inns, Int'l, Inc. v. High Tech Inn.com, LLC*, No. 07-5014, 2009 WL 5216978, at *6 (D.N.J. Dec. 29, 2009) ("An 'ordinary commercial transaction based in contract' does not give rise to a fiduciary duty."). Accordingly, the Court dismisses the breach of fiduciary duty claim without prejudice.

### D. New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, *et seq.* ("NJCFA") (Count VI)

Count VI asserts a violation of the NJCFA. (ECF 1, Compl. at 28-20.) Defendants argue that Plaintiff only made general, conclusory allegations that fail to meet the heightened pleading standard under Rule 9(b) and that Plaintiff failed to allege an "ascertainable loss" under the NJCFA. (ECF 5, MTD at 11-14.) Plaintiff argues that the heightened 9(b) pleading standard does not apply to unconscionable commercial practice claims under the NJCFA and that even if Rule 9(b) applies, the Complaint satisfies both pleading standards. Plaintiff also argues that he sufficiently alleged an ascertainable loss under the NJCFA. (ECF 13, Opp. at 9-13.)

"To state a prima facie case under the NJCFA, a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (citing *Payan v. GreenPoint Mortg. Funding, Inc.*, 681 F. Supp. 2d 564, 572 (D.N.J. 2010)). The

Act intended to protect "consumers who purchase 'goods or services generally sold to the public at large.'" *Arc Networks, Inc. v. Gold Phone Card Co., Inc.*, 756 A.2d 636, 637 (N.J. Super. Ct. Law Div. 2000) (quoting *Marascio v. Campanella*, 689 A.2d 852, 857 (N.J. Super. Ct. App. Div. 1997)). The Act was designed to apply to "products and services sold to consumers in the popular sense." *Arc Networks*, 756 A.2d at 638. "[T]o be a consumer respecting the transaction in question, the business entity must be 'one who uses (economic) goods, and so diminishes and uses their utilities.'" *City Check Cashing Inc. v. Nat'l State Bank*, 582 A.2d 809, 811 (N.J. Super. Ct. App. Div. 1990) (quoting *Hundred East Credit Corp. v. Eric Schuster*, 515 A.2d 246, 248 (N.J. Super. Ct. App. Div. 1986)). To determine the application of the NJCFA, a court should consider "the character of the transaction rather than the identity of the purchaser[.]" *J & R Ice Cream Corp. v. Cal. Smoothie Licensing Corp.*, 31 F.3d 1259, 1273 (3d Cir. 1994). Further, an "unlawful practice" is defined in the NJCFA as:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person . . .

N.J. Stat. Ann. § 56:8-2. Additionally, "[a]n actionable loss is not 'hypothetical or illusory.'" *Spera v. Samsung Elecs. Am., Inc.*, No. 12-05412, 2014 WL 1334256, at *5 (D.N.J. Apr. 2, 2014) (quoting *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005)). Instead, "what New Jersey Courts require for that loss to be 'ascertainable' is for the consumer to quantify the difference in value between the promised product and the actual product received." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011). Finally, CFA claims are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b);

*Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 435 (D.N.J. 2012) (recognizing that Rule 9(b)'s heightened pleading requirements apply to NJCFA claims). However, the Third Circuit has applied the *Iqbal* plausibility standard instead of the heightened 9(b) standard to NJCFA violations based on the unconscionable commercial practices clause. *Ciser v. Nestle Waters N. Am., Inc.*, 596 F. App'x 157, 160 (3d Cir. 2015) (citing *Iqbal*, 556 U.S. at 678).

Here, Plaintiff fails to state a claim under the NJCFA. Under either Rule 8 or Rule 9(b) pleading standards, Plaintiff fails to provide the Court with sufficient facts to state a claim for violation under the NJCFA. In the first instance, it is unclear whether the Complaint adequately captures Robinson as a "consumer" as contemplated by the NJCFA. The Complaint does not allege that Plaintiff Robinson used any good or diminished or used any utility provided by Defendants. *See Arc Networks*, 756 A.2d at 638; *see also City Check Cashing*, 582 A.2d at 811. After assessing "the character of the transaction," it is unclear from the face of the Complaint that Plaintiff is a consumer captured by the NJCFA — Plaintiff did not directly purchase services from Defendants, use or diminish goods or services, nor does Plaintiff assert that he has been "victimized by being lured into a purchase through fraudulent, deceptive, or other similar kind of selling or advertising practices. *See J & R Ice Cream*, 31 F.3d at 1273; *see also Daaleman v. Elizabethtown Gas Co.*, 390 A.2d 566, 569 (N.J. 1978). Rather, the Complaint specifies that the people affected by the data breach did not have a relationship with Maintech. (Compl. ¶ 3.) Plaintiff therefore did not purchase a product or service from Defendants in the "popular sense." *See Arc Networks*, 756 A.2d at 638.

In addition, the Complaint makes several conclusory assertions regarding misrepresentations in violation of the NJCFA that fall under the heightened 9(b) standard. *See Mickens*, 900 F. Supp. 2d at 435. For example, the Complaint states that Defendants "misrepresent[ed] material facts, pertaining to the sale of IT services, to its clients' consumers,

including the Plaintiff and Class Members, by representing that they would maintain adequate data security practices and procedures to safeguard Plaintiff's and Class Members' PII from unauthorized disclosure, release, data breaches, and theft." (ECF 1, Compl. ¶ 139.) These accusations require factual assertions within the Complaint to state a claim that survives a motion to dismiss. However, the Complaint does not allege facts wherein Defendants affirmatively misrepresent material facts to Plaintiff himself. As noted, Plaintiff did not have a relationship with Defendants and was presumably unaware of the company and its representations to its clients. (*Id.* ¶ 3.) Plaintiff argues that Maintech engaged in "unconscionable and deceptive acts and practices . . . by failing to maintain the privacy and security of Plaintiff's and Class Members' PII" and "by failing to disclose the [d]ata [b]reach to Plaintiff and Class Members in a timely and accurate manner . . . ." (*Id.* ¶ 139.) To the extent that Count VI asserts a claim under the unconscionable commercial practices clause, it is subject to the less stringent pleading standard. *See Ciser*, 596 F. App'x at 160. However, the Complaint fails to state a claim under either pleading standard because it is unclear on the face of the Complaint whether Plaintiff has standing as a consumer as captured by the NJCFA. Accordingly, the Court dismisses the NJCFA claim without prejudice.[2]

## IV.   CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED**. Counts III, IV, V, and VI are dismissed without prejudice. An appropriate order follows. Plaintiff may file an amended pleading that is consistent with this Opinion within thirty (30) days of the date of the Opinion and the accompanying Order.

---

[2] Because the NJCFA claim fails for the reasons discussed above, the Court declines to engage in the "ascertainable loss" analysis at this time. However, because it seems that the NJCFA is an ill-suited cause of action for the allegations in the Complaint, the Court notes that an "ascertainable loss" assessment under the NJCFA would require Plaintiff to quantify the difference in value between the promised product and the actual product received from Defendants. *See Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011). It is presently unclear on the face of the Complaint what products or services were explicitly transacted for between Plaintiff and the Defendants.

10

_/s/ Jamel K. Semper_____
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:   Clerk
cc:     André M. Espinosa, U.S.M.J.
        Parties